**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Gloria Denise Pressley,

           Plaintiff,

v.

Commissioner of Social Security Administration,

           Defendant.

No. CV-20-01672-PHX-DGC

**ORDER**

      Plaintiff Gloria Pressley seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her disability insurance benefits under §§ 216(i) and 223(d) of the Social Security Act.  For the following reasons, the Court will reverse the decision of the Administrative Law Judge ("ALJ") and remand for additional proceedings.

**I.    Background.**

      Plaintiff is a 58-year-old woman with a high school education.  Doc. 13, A.R. 71, 223.[1]  She has worked at various semiskilled jobs, including as a nurse assistant, home health aide, and customer order clerk.  A.R. 23, 223.  Plaintiff applied for disability benefits on December 20, 2016, alleging disability beginning September 30, 2016.  A.R. 13.  Plaintiff alleges that her mental health issues, including depression and anxiety, and

---

[1] "A.R." refers to the administrative record in this case.  For consistency, the Court, where possible, will cite to portions of the record by administrative record page number rather than by exhibit numbers.

1   physical impairments, including degenerative disc disease, ischiofemoral impingement,

2   bilateral hand osteoarthritis, obesity, fibromyalgia, and vertigo, are so debilitating that she

3   is unable to work.  Doc. 20 at 3.

4          On October 7, 2019, Plaintiff and a vocational expert ("VE") appeared and testified

5   at a hearing before the ALJ.  A.R. 31-69.  On November 4, 2019, the ALJ issued an

6   unfavorable decision, finding that Plaintiff was not disabled within the meaning of the

7   Social Security Act.  A.R. 10-24.  The ALJ's decision became Defendant's final decision

8   with the Appeals Council denied review on June 25, 2020.  A.R. 1-6.

9   **II.    Legal Standard.**

10          The Court reviews only those issues raised by the party challenging the ALJ's

11   decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set

12   aside the Commissioner's disability determination only if it is not supported by substantial

13   evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

14   Substantial evidence is more than a scintilla, less than a preponderance, and relevant

15   evidence that a reasonable person might accept as adequate to support a conclusion

16   considering the whole record.  *Id.*  The Court must consider the whole record and may not

17   affirm simply by isolating a "specific quantum of supporting evidence."  *Id.* (internal

18   citations and quotation marks omitted).  As a general rule, "[w]here the evidence is

19   susceptible to more than one rational interpretation, one of which supports the ALJ's

20   decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

21   (9th Cir. 2002) (citations omitted).  The ALJ is responsible for resolving conflicts in

22   medical testimony, determining credibility, and resolving ambiguities.  *Andrews v.*

23   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  In reviewing the ALJ's reasoning, the Court

24   is "not deprived of [its] faculties for drawing specific and legitimate inferences from the

25   ALJ's opinion."  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

26   **III.   The ALJ's Sequential Evaluation Process.**

27          Whether a claimant is disabled is determined using a five-step evaluation process.

28   The claimant must show that (1) she is not currently working, (2) she has a severe

impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing past work. If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the claimant meets her burden at step four, the Commissioner must show at the fifth step that the claimant is able to perform other work given her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019, and that she had not engaged in substantial gainful activity since September 30, 2016. A.R. 16. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, ischiofemoral impingement, bilateral hand osteoarthritis, obesity, fibromyalgia, and vertigo. *Id.* The ALJ acknowledged that the record contained evidence of depressive disorder and anxiety, but found that they were not severe impairments. A.R. 17. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. A.R. 18. At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except she was never able to climb ladders, ropes, or scaffolds; she was occasionally able to climb ramps and stairs, balance, stoop, crouch, kneel, or crawl; she was able to have no exposure to dangerous machinery with moving mechanical parts or to unprotected heights; she was unable to drive as part of her job duties; and she was able to frequently handle and finger bilaterally. A.R. 19.[2] The ALJ concluded that Plaintiff could perform her past relevant

---

[2] Regulations define "light work" as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the patient must have the ability to do substantially all of these activities. If someone can do light work, the ALJ determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. 404.1567(b).

work as a customer order clerk and that she was not disabled within the meaning of the Social Security Act from September 30, 2016, through June 30, 2019.  A.R. 23-24.

## IV.   Discussion.

Plaintiff's appeal focuses on the ALJ's conclusions about her physical impairments. Doc. 20 at 3.  Plaintiff argues that the ALJ erred by failing to give specific and legitimate reasons for discrediting the opinions of Plaintiff's treating physicians, Drs. Kirk Puttlitz and Michael Steingart, and by rejecting Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence.  Doc. 20 at 11-26.

### A.   Treating Provider Opinions.

#### 1.   Legal Standard.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that a claimant is "disabled" or "unable to work."  20 C.F.R. § 404.1527(d)(1).  But the Commissioner generally must defer to a physician's medical opinion, including statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions.  § 404.1527(a)(2), (c).

Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41 (9th Cir.1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted).  An opinion contradicted by another doctor can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.* at 830-31 (citation omitted).  This requires the ALJ to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.  Under either standard, "[t]he ALJ must do more than offer [her] conclusions.  [She] must set forth

[her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

### 2. Dr. Kirk Puttlitz.

Dr. Kirk Puttlitz, a pain management physician at the CORE Institute in Phoenix, has treated Plaintiff since January 2017.[3]  A.R. 444.  The ALJ gave Dr. Puttlitz's opinion little weight.  A.R. 22.

### a. Opinion.

On September 13, 2017, Dr. Puttlitz completed a check-box form indicating that Plaintiff was impaired by thoracic and lumbar disc degeneration and lumbar radiculopathy and that the impairments precluded an eight-hour work day.  A.R. 742.  He opined that Plaintiff could sit, stand, or walk for less than two hours at a time during an eight-hour work day; lift or carry less than ten pounds; bend, reach, or stoop in a work setting only occasionally (21%-33%); and use her right and left hands and feet frequently (34%-66%). *Id.*  She would need to shift position every 21-45 minutes, take a break of at least 15 minutes after shifting positions, and miss 6 or more days of work per month due to her impairments. A.R. 742-43.  Additionally, Dr. Puttlitz noted that Plaintiff's pain and fatigue would result in moderately severe limitations, meaning she would be off task for 16%-20% of an eight-hour work day.  A.R. 743.  He indicated that he considered and reviewed his own and other treatment records in coming to this opinion and that the limitations he assessed resulted from objective findings documented in Plaintiff's medical records. *Id.*

On April 15, 2019, Dr. Puttlitz completed a second check-box form indicating that Plaintiff's impairments still precluded an eight-hour workday.  A.R. 1170.  He opined that Plaintiff could sit more than three but less than four hours in an eight-hour day; stand or walk less than two hours; carry or lift between 10 and 15 pounds; bend, reach, or stoop in a work setting only occasionally (21%-33%); and use her right and left hands continuously (67%-100%). *Id.*  Plaintiff would need to shift positions every 1-20 minutes, take a break

---

[3] Plaintiff was a patient at the CORE Institute starting in October 2016, but was seen by a different doctor until January 2017, at which point Dr. Puttlitz assumed her care. *See* A.R. 465.

1    of at least 15 minutes after shifting positions, and miss 4-5 days of work per month due to

2    her impairments.  A.R. at 1171.  Dr. Puttlitz indicated that he considered and reviewed his

3    own and other treatment records in coming to this opinion and that the limitations he

4    assessed resulted from objective findings documented in Plaintiff's medical records.  *Id.*

5                    **b.**      **ALJ's Reasoning.**

6            Dr. Puttlitz's opinions regarding Plaintiff's limitations were contradicted by other

7    physicians.  His opinion that Plaintiff was limited in her ability to sit, stand, or walk in

8    work situations was contradicted by consultive examiner Dr. Cunningham, who assessed

9    no limitations on such activities for Plaintiff.  A.R. 576.  Similarly, the opinions of State

10   agency medical consultants Drs. Griffith and Battis contradict Dr. Puttlitz's opinions

11   regarding Plaintiff's limitations, assessing that she could stand, walk, or sit for about six

12   hours of an eight-hour work day.  A.R. 81, 102.  Because Dr. Puttlitz's opinion was

13   contradicted by other doctors, the ALJ was required to provide specific and legitimate

14   reasons for rejecting it, supported by substantial evidence on the record.  *Lester*, 81 F.3d at

15   830.

16           The ALJ identified three reasons for giving Dr. Puttlitz's opinion little weight: (1) it

17   was inconsistent with the assessments of non-examining physicians Ernest Griffith and

18   Sandra Battis and of examining physician Keith W. Cunningham; (2) it was "extreme and

19   unsupported by the medical records," including Dr. Puttlitz's own clinical notes from the

20   relevant period, which "show mostly normal physical examinations;" and (3) Dr. Puttlitz's

21   reliance on check-box forms "provides minimal explanations" for his assessed limitations.

22   A.R. 22.

23                         **i.**      **First Reason.**

24           The ALJ found that the opinion of Dr. Puttlitz was inconsistent with the assessments

25   Drs. Griffith, Battis, and Cunningham.  A.R. 22.  Plaintiff argues that this is not a specific

26   or legitimate reason because the presence of contradictory opinions merely triggers the

27   specific-and-legitimate standard, as opposed to the higher standard that governs if the

28   opinion is uncontradicted.  Doc. 20 at 13-14.  If the mere presence of contradictory opinions

1  was a specific and legitimate reason, Plaintiff argues, "determining disability would be the
2  result of a democratic vote, treating all votes equally." *Id.* at 14.

3       The Commissioner argues that the combination of the three contradicting opinions
4  is substantial evidence supporting the ALJ's determination because the three doctors
5  supported their conclusions with notes about the record or, in the case of Dr. Cunningham,
6  examination findings. Doc. 21 at 12. The Commissioner also argues that Dr. Cunningham's
7  opinion alone constitutes substantial evidence because it is based on his own independent
8  examination of Plaintiff.  *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.
9  2001)).

10      The mere fact that a contradiction exists is not enough to justify discrediting the
11 treating physician's opinion.  *See Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).
12 "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not
13 reject this opinion without providing specific and legitimate reasons supported by
14 substantial evidence in the record." *Id.* at 633 (citations and internal quotations omitted).
15 When the *findings* of treating physicians and examining physicians are the same, but their
16 ultimate *opinions* differ, the conclusions of the examining physician are not substantial
17 evidence. *Id.* at 632.  But "when an examining physician provides 'independent clinical
18 findings that differ from the findings of the treating physician,' such findings are
19 'substantial evidence.'" *Id.* (citation omitted).  "Independent clinical findings can be either
20 (1) diagnoses that differ from those offered by another physician and that are supported by
21 substantial evidence, or (2) findings based on objective medical tests that the treating
22 physician has not herself considered." *Id.* (citation omitted).

23      "Even when contradicted by an opinion of an examining physician that constitutes
24 substantial evidence, the treating physician's opinion is still entitled to deference." *Id.* at
25 632-33 (citing S.S.R. 96–2p at 1, 4; 61 Fed. Reg. at 34,491).  The opinions of nonexamining
26 physicians cannot by themselves constitute substantial evidence that justifies the rejection
27 of the opinion of a treating physician.  *Lester*, 81 F.3d at 831.  But the opinions of

28

- 7 -

1    nonexamining physicians can be substantial evidence if consistent with other independent

2    evidence in the record. *Magallanes*, 881 F.2d at 751.

3            The ALJ did not discuss how the findings of Dr. Cunningham constitute substantial

4    evidence for discrediting Dr. Puttlitz. She did not discuss differences in their diagnoses,

5    methodologies, qualifications, or any other reasons for crediting a single examination of

6    Plaintiff over the treating assessment of Dr. Puttlitz. Indeed, many of Dr. Cunningham's

7    observations in his evaluation notes are consistent with those of Dr. Puttlitz. Dr.

8    Cunningham documented Plaintiff's abnormal gait, pain with palpation of her lumbar

9    spine, and reduced range of motion in her lumbar spine. A.R. 574-75. Dr. Cunningham

10   also apparently agreed with Plaintiff's diagnosis of degenerative disc disease. A.R. 575.

11   It also does not appear that Dr. Cunningham based his opinions on any objective medical

12   tests that Dr. Puttlitz did not consider – it is not clear from his records that he even had the

13   benefit of reviewing the objective data produced by Dr. Puttlitz. Thus, it appears that the

14   difference between the assessments of Drs. Puttlitz and Cunningham is one of *opinion*

15   rather than of *findings*. As a result, Dr. Cunningham's differing opinion is not substantial

16   evidence on which to reject Dr. Puttlitz's opinion. *Orn*, 495 F.3d at 632.

17           The opinions of nonexamining physicians Griffith and Battis cannot by themselves

18   constitute substantial evidence, but they can be substantial evidence if consistent with other

19   independent evidence in the record. *Magallanes*, 881 F.2d at 751. The ALJ found the

20   opinions of Drs. Griffith and Battis consistent with each other and with Dr. Cunningham.

21   A.R. 22. As noted above, however, the ALJ did not make clear how the *findings* of Dr.

22   Cunningham differed from those of Dr. Puttlitz such that they constitute substantial

23   evidence on which to reject Dr. Puttlitz's assessments. It is likewise unclear whether the

24   ALJ found the opinions of Drs. Griffith and Battis to be consistent with other evidence in

25   the record so as to justify favoring their opinions over those of Dr. Puttlitz.

26                                    **ii.    Second Reason.**

27           The ALJ found Dr. Puttlitz's opinion to be "extreme and unsupported by the medical

28   records." A.R. 22. She also found the opinion "contradicted by his own clinical notes

1    authored during the relevant period, which show mostly normal physical examinations."

2    *Id.* Plaintiff argues that the ALJ mischaracterized what Dr. Puttlitz assessed and

3    overstepped her proper role. Doc. 20 at 14. The ALJ's own view of the assessed limitations

4    as "extreme," Plaintiff argues, is not substantial evidence on which to reject his assessment.

5    *Id.*

6        Plaintiff also argues that the ALJ's conclusion that the assessed limitations were not

7    supported by the medical records is itself unsupported by the records in this case. *Id.* at

8    15-16. Plaintiff takes issue with the ALJ's citations for her finding that Dr. Puttlitz's own

9    clinical notes show "mostly normal" physical examinations, arguing that the ALJ neither

10   defines what "mostly normal" means nor provides any precise citations demonstrating

11   these "normal" examinations, citing instead to 150 pages of records generally. *Id.* at 16.

12       The Commissioner responds only by providing page cites within the larger exhibits

13   to which the ALJ cited. Doc. 21 at 13 ("The ALJ noted that Dr. Puttlitz'[s] opinion was

14   inconsistent with his own clinical notes, which showed mostly normal physical

15   examinations (AR 22 citing AR 873, 883-84, 888-89, 897-98, 902-03, 912-13, 928-29,

16   919-20, 938-39, 945-46, 954-55, 958-60, 991, 997-98, 1002-03, 1012-13, 1021-22, 1027-

17   28, 1036-37)). But these specific citations were not provided by the ALJ in her opinion,

18   which cited only generally to exhibits 15F and 20F – spanning 94 and 56 pages

19   respectively.[4] A.R. 22. The Commissioner did not respond to Plaintiff's arguments about

20   the ALJ mischaracterizing limitations or usurping the role of the physician.

21       The ALJ's general citations to portions of Dr. Puttlitz's clinical notes fail to provide

22   specific and legitimate reasons for rejecting his medical opinion because she does not

---

[4] In other portions of her opinion, the ALJ did cite specifically to Exhibit 15F/6 (A.R. 873) and Exhibit 20F/3-4, 33-34 (A.R. 991-92, 1021-22) as examples of normal physical examinations. A.R. 20. But she did not explain why these records should be considered "normal" when they show, respectively: tenderness with palpation of the lumbosacral paraspinal and sacroiliac joint, tender lumbar extension range of motion, and a positive quadrant loading maneuver test (A.R. 873); tender palpation over the paraspinal thoracic spine, sacral iliac joint, and lumbosacral paraspinals, a positive quadrant loading maneuver test, and a "clinical scenario consisting of extension based axial lumbosacral paraspinal pain (likely implicating the facet joints as a pain generator)" (A.R. 991-92); and painful range of motion and tenderness with palpation of paraspinal facets and posterior superior iliac spine (A.R. 1021).

explain how these reports contradict the opinion or otherwise render it extreme.  The ALJ cited generally to Exhibit 15F, which contains medical records from the CORE Institute from October 18, 2016 to October 16, 2017, including the months leading up to Dr. Puttlitz's medical assessment on September 13, 2017.  Throughout these records are findings of Plaintiff's worsening pain, reduced range of motion, and positive quadrant loading maneuver tests.[5]  *See, e.g.*, A.R. 873, 883, 888-89, 897, 902, 912, 919, 929, 939, 946.  Also in these records are diagnostic imaging results showing Plaintiff's degenerative disc disease, disc protrusion, and spondylosis.  A.R. 933, 936, 942, 943.  The ALJ neither acknowledges these findings nor explains why the records as a whole should be considered "mostly normal" and inconsistent with Dr. Puttlitz's first opinion.

Exhibit 20F does not contain Dr. Puttlitz's records leading up to his second medical assessment on April 15, 2019 (they span approximately November 2017 to August 2018).  *See* A.R. 989-1044.  The mere citation of Exhibit 20F is not a specific or legitimate reason to reject Dr. Puttlitz's opinion.  References to Plaintiff's pain, reduced range of motion, and positive provocative tests are found throughout the exhibit.  *See, e.g.*, A.R. 991, 997, 1002, 1012, 1021, 1027, 1037, 1042.  The ALJ provided no discussion of why these notes are inconsistent with Dr. Puttlitz's opinions or why other, more "normal" findings, were more germane.

Exhibit 35F, not cited by the ALJ, documents Plaintiff's pain, poor range of motion, and repeated and numerous positive provocative tests in the months and days leading up to Dr. Puttlitz's second assessment form.  *See, e.g.*, A.R. 1403, 1408, 1416, 1427.  The ALJ neither acknowledged these records nor explained why they were unpersuasive in her determination that Dr. Puttlitz's clinical notes showed "mostly normal physical examinations" during the relevant time periods.

---

[5] It is true that many of these pages also document more "normal" findings as well.  *See, e.g.*, A.R. 929 (detailing a physical examination of Plaintiff that revealed, on the one hand, no swelling, 5/5 strength in lower limbs, and negative straight leg raising test, but, on the other hand, tender lumbar range of motion, tenderness with palpation of lumbar spine, and positive quadrant loading maneuver test).  The ALJ did not explain why some of these findings are more significant or persuasive than others.

1    In short, the ALJ provided no specific reasons for her conclusion that Dr. Puttlitz's

2    opinion was extreme or that his treatment notes failed to support his opinions.  Treating

3    physician opinions are entitled to deference and ALJs cannot usurp the role of doctors when

4    interpreting the medical evidence and weighing treating medical sources.  *Trevizo v.*

5    *Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("The ALJ . . . reject[ed] the informed medical

6    opinion of [Plaintiff's] primary treating physician and instead improperly substituted her

7    judgment for that of the doctor."); *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir.

8    2014) (reiterating that "[t]he ALJ must set forth his own interpretations and explain why

9    they, rather than the doctors', are correct"); *see also Clifford v. Apfel*, 227 F.3d 863, 870

10   (7th Cir. 2000) ("As this Court has counseled on many occasions, ALJs must not succumb

11   to the temptation to play doctor and make their own independent medical findings.").

12                          **iii.      Third Reason.**

13   The ALJ also relied on Dr. Puttlitz's use of check-box forms and their minimal

14   explanations.  A.R. 22.  The Ninth Circuit has issued conflicting guidance on this issue,

15   stating that an "ALJ may permissibly reject check-off reports that do not contain any

16   explanation of the bases of their conclusions," *Molina v. Astrue*, 674 F.3d 1104, 1111-12

17   (9th Cir. 2012), and also that ALJs may not "reject the responses of a treating physician

18   without specific and legitimate reasons for doing so, even where those responses were

19   provided on a 'check-the-box' form, were not accompanied by comments, and did not

20   indicate to the ALJ the basis for the physician's answers," *Trevizo*, 871 F.3d at 677 n.4 (not

21   citing *Molina*).  The Ninth Circuit has held, however, that ALJs err when they disregard a

22   treating physician's check-box form that is consistent with the claimant's testimony and

23   treatment notes.  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

24   Dr. Puttlitz's two check-box opinions indicate that he considered his own treatment

25   history with Plaintiff.  A.R. 743, 1171.  The ALJ has not shown that Dr. Puttlitz's clinical

26   notes fail to support his opinion concerning Plaintiff's limitations and ability to work.  As

27

28

1   a result, Dr. Puttlitz's opinions, though brief, were not unsupported by the record as a whole

2   and the ALJ's third reason was not a legitimate basis for discounting them.[6]

3               **3.**        **Dr. Michael Steingart.**

4             Dr. Michael Steingart is an orthopedic surgeon who treated Plaintiff from March

5   2019.  *See* A.R. 1210.  The ALJ gave Dr. Steingart's opinion little weight.  A.R. 22.

6                     **a.**        **Opinion.**

7             On August 13, 2019, Dr. Steingart completed a check-box form indicating that

8   Plaintiff was impaired by "thoracic disc, hip labral tear right, DJD [degenerative joint

9   disease] lumbar spine with L5-S1 spondylosis, sacroiliac joint arthropathy" and that, as a

10   result of these impairments, Plaintiff was precluded from an eight-hour work day.  A.R.

11   1297.  Dr. Steingart opined that Plaintiff could sit, stand, and walk less than two hours at a

12   time during an eight-hour work day; lift or carry less than ten pounds; bend or stoop less

13   than occasionally (0%-20%); reach occasionally (21%-33%); and use her left and right

14   hands frequently (34%-66%).  *Id.*  He indicated that Plaintiff would need to alternate her

15   position every 1-20 minutes and, following alternating her position, rest for at least 15

16   minutes.  *Id.*  Dr. Steingart also indicated that Plaintiff's limitations would result in

17   moderately severe cognitive or pace limitations which would inhibit the completion of

18   more than one- or two-step duties in an eight-hour work day; that the impairments would

19   result in, cause or contribute to headaches or mental fatigue more than four times per month

20   which would result in Plaintiff needing to rest twenty minutes to an hour at a time; and that

21   Plaintiff would miss 4-5 days of work due to her impairments.  A.R. 1298.  Dr. Steingart

22   indicated that he considered and reviewed his own and other treatment records – including

23   MRI scans, radiology, physical therapy notes, and records from the CORE Institute – in

24   coming to his opinion and that the limitations he assessed resulted from objective findings

25   documented in Plaintiff's medical records.  *Id.*

26   / / /

---

27   [6] Moreover, the Court notes that the opinion of Dr. Cunningham, the consultive examiner
28   whose opinion the ALJ favored over Dr. Puttlitz's, was also primarily provided on a brief
check-box form.  *See* A.R. 575-77.  The ALJ did not explain why this form was more
reliable than the similar forms utilized by Dr. Puttlitz.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.      ALJ's Reasoning.

Dr. Steingart's assessment of Plaintiff's limitations was contradicted by the assessments of Drs. Griffith, Battis, and Cunningham.  The ALJ accordingly was required to provide specific and legitimate reasons for rejecting it, supported by substantial evidence on the record.  *Lester*, 81 F.3d at 830.

The ALJ gave four reasons: (1) Dr. Steingart's opinion was inconsistent with the opinions of Drs. Griffith, Battis, and Cunningham; (2) his opinion was "extreme and unsupported by the medical records," including his own clinical notes that showed "mostly full strength, intact sensations, a normal gait, and no instability;" (3) Dr. Steingart noted that the Plaintiff asked him to fill out forms "to make her disabled for free;" and (4) Dr. Steingart's reliance on check-box forms "provides minimal explanations" for his assessed limitations.  A.R. 22.

### i.      First Reason.

As discussed above, the bare fact that Dr. Steingart's opinion was contradicted by other physicians is not itself a specific and legitimate reason to discount Dr. Steingart's opinion.  *See Orn*, 495 F.3d at 632-33.  "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record."  *Id.* at 633 (citations and internal quotations omitted).  The ALJ did not discuss how or why the findings of Drs. Griffith, Battis, and Cunningham contradicted Dr. Steingart's, nor why the three opinions constituted substantial evidence sufficient to set aside Dr. Steingart's opinion.

### ii.      Second Reason.

Plaintiff argues that the ALJ's second reason – that Dr. Steingart's opinion was extreme and unsupported by the medical records – amounts to impermissible cherry-picking of the medical records.  Doc. 20 at 17.  The record cited by the ALJ for her characterization of Dr. Steingart's records, Plaintiff points out, also documents Plaintiff's pain, painful range of motion, and positive straight leg raising test.  *Id.*; *see also* A.R. 1201.

- 13 -

1   The Commissioner does not directly respond to Plaintiff's cherry-picking argument, and

2   instead simply restates the ALJ's reasoning.  Doc. 21 at 13.

3          The ALJ's characterization of Dr. Steingart's records was not a specific and

4   legitimate reason to reject his opinion regarding Plaintiff's limitations.  As Plaintiff

5   correctly notes, the same record cited by the ALJ to support her assertion documents

6   Plaintiff's pain, tender range of motion, and positive straight leg raising test.  A.R. 1201-02.

7   The record cited by the ALJ also details Plaintiff's complaint of severe pain after riding in

8   a car on a trip to Yuma, motor strength of 3-4 out of 5, and positive provocative testing on

9   Plaintiff's right sacroiliac joint.  A.R. 1202.  Moreover, nearly every one of Dr. Steingart's

10  records documenting an office visit by Plaintiff note severe pain (A.R. 1204, 1206, 1208,

11  1210), limitations on range of motion (A.R. 1204, 1206, 1208, 1210-11), diminished motor

12  strength (A.R. 1204, 1207-08, 1210-11), painful straight leg raise tests (A.R. 1204, 1206),

13  and impaired gait (A.R. 1208, 1210).  The ALJ did not acknowledge these findings or

14  explain how Dr. Steingart's opinion could be called "extreme" in light of them.

                                    **iii.    Third Reason.**

15

16         Plaintiff argues that the ALJ's third reason – that Plaintiff asked Dr. Steingart to

17  make her disabled for free – is not a specific and legitimate reason because the ALJ did not

18  explain how this fact invalidated his opinion.  Plaintiff argues that Dr. Steingart's

19  completing the form without charging his full fee should bolster his credibility, not

20  undercut it.

21         In a record of Plaintiff's office visit on May 24, 2019, Dr. Steingart did note that

22  Plaintiff "feels that since she is on Medicaid I should fill out all the forms to make her

23  disabled for free."  A.R. 1206.  But the ALJ did not explain how this request, made almost

24  three months before Dr. Steingart completed his medical assessment August 13, 2019,

25  made his assessment doubtful.  The Court cannot discern the ALJ's reasoning, and

26  therefore finds that the ALJ's third reason is not specific or legitimate.

27  / / /

28  / / /

1

### iv.     Fourth Reason.

2      An ALJ may discredit a treating physician's opinion that is conclusory, brief, and

3   unsupported by the record as a whole or by objective medical findings. *Burrell*, 775 F.3d

4   at 1140.   Dr. Steingart's opinion is brief, and the ALJ determined that it was unsupported

5   by Dr. Steingart's clinical notes from the relevant period, which the ALJ described as

6   showing "mostly full strength, intact sensations, a normal gait, and no instability."  A.R.

7   22.   As discussed in detail above, however, the ALJ has not shown that Dr. Steingart's

8   clinical notes fail to support his opinion concerning Plaintiff's limitations and ability to

9   work.   As a result, Dr. Steingart's opinions, though brief, were not unsupported by the

10  record as a whole and the ALJ's fourth reason was not a legitimate basis for discounting it.

11      **B.     Evaluation of Plaintiff's Symptom Testimony.**

12      In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step

13  analysis.  First, the ALJ must determine whether the claimant presented objective medical

14  evidence of an impairment that could reasonably be expected to produce the symptoms

15  alleged.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).   The claimant is not

16  required to show that his impairment could reasonably be expected to cause the severity of

17  the symptoms he has alleged, only that it could reasonably have caused some degree of the

18  symptoms.  *Id.*   Second, if there is no evidence of malingering, the ALJ may reject the

19  claimant's symptom testimony only by giving specific, clear, and convincing reasons.  *Id.*

20  at 1015.  A finding that a claimant's testimony is not credible "must be sufficiently specific

21  to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on

22  permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

23  pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and quotation

24  marks omitted).

25      Plaintiff testified that she suffered from mid to lower back pain which radiated into

26  her leg.  A.R. 50.  Because of her back pain, she testified to often needing to lay down for

27  a couple hours at a time to relieve her pain (A.R. 56), being unable to vacuum or stand at

28  the sink or stove to cook more than a quick meal (*id.*), needing to use a rider cart in the

grocery store (A.R. 58), and feeling pain in her back when lifting a gallon of milk (*id.*). Plaintiff testified that she could only stand for about 15 to 20 minutes before needing to sit down and that she could only walk about half a block before needing a break.  A.R. 57. She also testified that her pain medications and injections gave her limited relief (A.R. 44 51), and that she was unable to continue getting injections in her mid-back because her Medicaid insurance would no longer pay for her to be sedated during the injections and she could not tolerate the pain of the injections without sedation (A.R. 50).

Plaintiff also testified that her ability to drive was limited because of the pain she felt in her back, hip, and leg while sitting and because the pain made it difficult to look backward.  A.R. 43.  When the ALJ asked Plaintiff about medical records indicating that she had an "episode" on a drive to Yuma which caused her to not be able to get out of the vehicle because of her pain, Plaintiff testified that she had been a passenger on the trip, not the driver.  A.R. 44.  The ALJ also asked Plaintiff about portions of medical records indicating that Plaintiff had acted as a caregiver to her sister before she passed away.  A.R. 45.  Plaintiff testified that her caregiving role was to "sit and hold her [sister's] hand, and just talk to her," rather than lifting or otherwise physically helping her sister.  A.R. 45-46.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to have caused the alleged symptoms."  A.R. 20.  The ALJ then found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record."  A.R. 20.  The ALJ gave three reasons: (1) Plaintiff's symptom testimony was unsupported by objective and clinical findings in the record (A.R. 20-21); (2) Plaintiff's treatment history "lack[ed] recommendations for aggressive surgical procedures," and Plaintiff managed her symptoms with medications (A.R. 21); and (3) other evidence – specifically that Plaintiff drove independently and for long distances, engaged in gardening, and served as a caregiver to her sister – highlighted inconsistencies in Plaintiff's subjective allegations (A.R. 21-22).

/ / /

### 1.      Not Supported by the Record.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* S.S.R. 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [she] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84).  In this case, the ALJ made no finding of malingering.  The ALJ accordingly could discount Plaintiff's testimony only "by making specific findings as to credibility and stating clear and convincing reasons for each.  *Id.* at 883.  "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the

claimant's complaints.'" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same). Moreover, treatment records "must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding ALJ's credibility determination unsupported in part because "[w]hen read as a whole, the treatment notes do not undermine [the claimant's] testimony.").

The ALJ relied on imaging studies – an x-ray in January 2017 showing mid to upper thoracic spondylosis and mild lumbar spondylosis; an MRI study in April 2018 showing normal alignment of Plaintiff's lumbar vertebral bodies, preserved vertebral body heights, mild disc narrowing, and mild degenerative thoracic spondylosis; an MRI study on June 11, 2019, showing severe narrowing of the bilateral ischiofemoral intervals with patchy impingement edema of the right quadratus femoris muscle; and a subsequent x-ray showing mild degenerative changes in the hips with no acute findings. A.R. 20. These objective findings, reasoned the ALJ, "show that the claimant was likely to have some pain and limitations, but not to the extent alleged." *Id.* As the cases above explain, however, the ALJ may not discount Plaintiff's testimony regarding the severity of her pain solely because it is not borne out by objective medical evidence. *Moisa*, 367 F.3d at 885; *Smolen*, 80 F.3d at 1282; *Bunnell*, 947 F.2d at 345-48. Moreover, the ALJ is not a trained radiologist and the Court does not find her interpretation of highly technical medical studies to be clear and convincing. *See Trevizo*, 871 F.3d at 683; *Garrison*, 759 F.3d at 1013-14; *see also Clifford*, 227 F.3d at 870.[7]

The ALJ also relied on records of physical examinations that she characterized as showing Plaintiff's "normal gait, normal strength in her bilateral upper or lower extremities, intact sensations, negative straight leg raising, negative musculoskeletal findings, and a lack of hand pain or swelling." A.R. 20. The Court does not find a list of some "normal" findings in these examinations to be a clear and convincing reason to

---

[7] It is true that the ALJ did not offer this as her sole reason to discount Plaintiff's testimony. But because the Court determines below that the ALJ's other proffered reasons are neither clear nor convincing, that she considers Plaintiff's symptom testimony to be unsupported by objective medical evidence cannot alone support discounting that testimony.

discount Plaintiff's testimony when, as noted above, the record contains evidence of Plaintiff's pain, reduced range of motion, and other positive provocative testing. Moreover, the ALJ never connected this discussion of the medical records to Plaintiff's testimony about her pain and the limitations it caused her, or stated that she rested her adverse credibility determination on those findings. *Burrell*, 775 F.3d at 1139 ("Although the ALJ made findings . . . he never stated that he rested his adverse credibility determination on those findings.  For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding.").

## 2.  Lack of Aggressive Surgical Recommendations.

The ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c).  An ALJ may "properly consider[ ] [a doctor's] failure to prescribe, and [Plaintiff's] failure to request, any serious medical treatment for . . . supposedly excruciating pain." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

The ALJ found that the absence of "recommendations for aggressive surgical procedures . . . underscores the non-disabling nature of [Plaintiff's] orthopedic impairments." A.R. 21.  The ALJ noted that Plaintiff managed her symptoms through medication and that her "receipt of facet injections reportedly improved her pain by over 80 percent." *Id.*  The ALJ also noted that Plaintiff's symptoms were initially helped by physical therapy, but that Plaintiff was "inconsistent and noncompliant" with those treatments.[8] *Id.*

---

[8] The ALJ also found fault in this same discussion with the fact that Plaintiff "did not adhere to her doctor's advice to stop smoking."  A.R. 21.  Because the Commissioner concedes that this was not a proper ground for the ALJ to discredit Plaintiff (Doc. 21 at 7 n.3, the Court will consider here only the other grounds the ALJ put forward.

Plaintiff argues that the ALJ erred by discrediting Plaintiff's symptom testimony because her doctors had not recommended surgery and that the ALJ mischaracterizes the medical records by asserting that Plaintiff's pain was successfully managed by medications and injections.   The Court agrees.   First, it is not a requirement for disability that a claimant's doctors recommend aggressive surgical procedures – the lack of such recommendation could indicate that Plaintiff's symptoms are not sufficiently severe to warrant surgery, but could also signify simply that her condition is not amenable to surgical correction.   The ALJ cites no authority to support her view that surgery is an available remedy to all back pain, or that nerve blocks and spinal injections are not aggressive treatment recommendations.   Plaintiff's failure to have had surgery is not a clear and convincing reason to discredit her testimony.

Second, it is not at all clear from the medical records that pain medication and injections were in fact adequately managing Plaintiff's pain.   Records suggest that Plaintiff was recommended injections precisely because her pain medications were not managing her pain.   *See* A.R. 948 (detailing Plaintiff's third office visit at the CORE Institute, Dr. Puttlitz considers "taking over" Plaintiff's pain medication prescription and, for the first time, recommends injections as a treatment path).   Moreover, the proposition that Plaintiff's pain improved by over 80 percent with injections is not entirely supported by the record.   It is true that the record cited by the ALJ for that proposition does state that Plaintiff "reported >80% improvement of pains" after her first injection.   A.R. 1019.   But nearly every other record considering the efficacy of the injections paints a different picture.   *See, e.g.*, A.R. 1003 ("She states she derive[s] about 50% relief with her sacral iliac joint injection lasting for about an hour."); A.R. 1013 ("She reports greater than 80% relief lasting for 2 days with her last diagnostic facet injections."); A.R. 1455 ("She reports greater than 80% relief with right lumbar transforaminal epidural lasting for 3 days."); A.R. 8113 ("As a result of her initial lumbar transforaminal epidural she reported 80% better with respect to her low back.   At last visit her back and leg pain had started to return. . . . Patient brought with her the pain diary from her bilateral . . . facet blocks.

Patient had 100% resolution of pain for approximately 3 hours, some return of pain when the numbing medication wore off, and then good improvement back to 100% over the next 3 days with the steroid.  Pain with activity gradually returned over the next 2-3 weeks.").  Thus, the ALJ's assertion that Plaintiff's pain is well managed by pain medications and injections is not a clear and convincing reason to discredit her testimony.

### 3.    Inconsistency with Plaintiff's Statements.

The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct.  *Molina*, 674 F.3d at 1112-13.  "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Id.* at 1113 (citations omitted).

The ALJ determined that evidence from "the objective records" showed that Plaintiff "reportedly drove independently and for long distances, engaged in gardening, and served as a caregiver in South Carolina for her sister until she passed."  A.R. 22.  These activities, reasoned the ALJ, "provide examples of her increased capacity to function in contravention to her allegations of extremely restrictive exertional activities and her claims that she cannot do anything."  *Id.*

Plaintiff argues that the ALJ's references to driving, gardening, and caregiving in the record are too vague to invalidate anything in Plaintiff's testimony.  Doc. 20 at 24.  Plaintiff also argues that the ALJ did not sufficiently link these activities to relevant work duties or demonstrate that Plaintiff spent a substantial part of a typical day engaged in these activities as required for a negative credibility determination based on a claimant's activities.  *Id.* at 25 (citing *Garrison*, 759 F.3d at 1016; *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001)).

The Court agrees that the ALJ failed to demonstrate that Plaintiff spent a substantial part of her day engaged in pursuits involving the performance of physical functions that

are transferable to a work setting.  *Orn*, 495 F.3d at 639.  The citations provided by the ALJ for each activity considered – driving, gardening, and caregiving – are ambiguous and do not establish the level of engagement required in this Circuit for an adverse credibility determination.

First, the record cited by the ALJ with regard to Plaintiff's ability to drive independently and for long distances is a record detailing a June 20, 2019, appointment with Dr. Steingart which states: "patient had an episode driving to Yuma could not get out of her vehicle because of right-sided discomfort," and later "states after a trip to [Y]uma this weekend she started to have pain in the LT hip and pain increased in the RT hip."  A.R. 1201.  As Plaintiff points out, it is ambiguous from these notes whether Plaintiff was indeed the driver on this trip – a fact denied by Plaintiff in her testimony, where she said that she was just a passenger in the car.  A.R. 44.  Nor does this record reflect, even if Plaintiff had been the driver, that she is able to drive herself independently and for long distances.  Rather, it reflects that when Plaintiff attempted to do so she was in so much pain she could not get out of her car and afterward sought medical attention.[9]

Second, it is not clear what the ALJ means when she says that Plaintiff engaged in gardening.  The citation provided by the ALJ on that point does not reference gardening.  *See* A.R. 1062.  The Court, in its review of the record in this case, has likewise found no reference to gardening that would explain the ALJ's assertion.  Gardening is referenced once in a mental health record dated May 23, 2018: "She . . . does find pleasure in gardening and spending time with her husband."  A.R. 1067.  But the record does not indicate what "gardening" entails or how often Plaintiff engaged in that activity.  The other references to "gardening" the Court has found in the record have been frequent reports that Plaintiff has complained that her pain *limits* her ability to garden. *See, e.g.*, A.R. 989 (listing "shopping, gardening" under "limitations due to pain" heading and "activities/hobbies"

---

[9] The Court additionally notes that the ALJ herself, in her assessment of Plaintiff's RFC, found that Plaintiff was "unable to drive as part of her job duties."  A.R. 19.  It is not clear, in light of that assessment, the significance to the ALJ of Plaintiff's supposed ability to drive independently and for long distances and how that ability would transfer to a work setting.

subheading), 995 (same), 1000 (same), 1010 (same), 1019 (same), 1026 (same), 1035 (same), 1040 (same).

Finally, the Court is not persuaded that Plaintiff's caregiving for her sister for approximately one month leading up to her sister's death demonstrates that Plaintiff spends a substantial part of her days engaging in activity transferrable to a work environment.  The ALJ cited two records, both from Plaintiff's mental health treatment provider, in support of her assertion that Plaintiff acted as caregiver for her sister.  *See* A.R. 22.  The first, from a psychotherapy visit on March 23, 2018, states: Plaintiff "was able to spend a month with her sister and was present the moment she died . . . .  She learned that despite her chronic pain, she was able to physically care for her sister – 'I moved through the pain.'  She was able to transfer that realization to areas of her daily living."  A.R. 1104.  The second record cited by the ALJ, dated April 18, 2018, states in relevant part: "The pt travelled to SC where she was her str's caregiver until she passed.  Pt was in SC a little more than a month."  A.R. 1093.  At the hearing, the ALJ asked Plaintiff about caring for her sister and Plaintiff reported that her role was providing emotional support and sitting with her sister during her illness.  A.R. 45-46.  The record does not reveal, and the ALJ did not make any specific findings regarding, what activities Plaintiff performed as a caregiver and whether those activities are inconsistent with her symptom testimony.

The ALJ never made specific findings about what these activities consisted of, how they were transferrable to a work setting, or how much time Plaintiff spent engaged in these activities in a day.  None of the three apparent inconsistencies cited by the ALJ – driving, gardening, or caregiving – are clear or convincing reasons to discredit her symptom testimony.

### C.    Scope of Remand.

The ALJ erred in discrediting the opinions of Drs. Puttlitz and Steingart and Plaintiff's symptom testimony.  Plaintiff contends that, crediting this evidence as true, the Court must remand for an award of benefits.  Doc. 20 at 26.  The Commissioner argues that remand is a more appropriate remedy.  Doc. 21 at 15-16.

1    "When the ALJ denies benefits and the court finds error, the court ordinarily must

2    remand to the agency for further proceedings before directing an award of benefits." *Leon*

3    *v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).  But under a "rare exception" to this rule,

4    the Court may remand for an immediate award of benefits if (1) the record has been fully

5    developed and further administrative proceedings would serve no useful purpose; (2) the

6    ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether

7    claimant testimony or medical opinion; and (3) the ALJ would be required to find the

8    claimant disabled if the improperly discredited evidence were credited as true. *Id.* (internal

9    quotations and citations omitted).

10        The second factor is satisfied; as discussed above, the ALJ failed to provide legally

11   sufficient reasons for rejecting the opinions of treating physicians and Plaintiff's symptom

12   testimony.  But the first factor is not present to justify the remedy Plaintiff seeks.  The

13   record is mixed, creating a doubt as to Plaintiff's disability, and further proceedings to

14   properly weigh the conflicting opinions and findings would be useful.  This case does not

15   present the rare circumstance in which an immediate award of benefits would be

16   appropriate.

17        **IT IS ORDERED:**

18        1.    The decision of the Commissioner of Social Security to deny Plaintiff

19   disability insurance benefits is **reversed** and **remanded** for further proceedings consistent

20   with this Order.

21        2.    The Clerk shall enter judgment accordingly and terminate this action.

22        Dated this 9th day of November, 2021.

David G. Campbell
Senior United States District Judge